[793 NYS2d 556]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROGER K. GUDZ, Appellant.

Third Department, April 7, 2005

**APPEARANCES OF COUNSEL**

*Paul J. Connolly*, Delmar, for appellant.

*Beth G. Cozzolino, District Attorney*, Hudson (*H. Neal Conolly* of counsel), for respondent.

**OPINION OF THE COURT**

CARDONA, P.J.

In July 2002 in the Town of Livingston, Columbia County, a witness observed defendant slowly drive his car across the center line of a road and strike a female bicyclist stopped alongside the road. The witness further observed defendant pull the struggling victim toward his vehicle. As the witness and other bystanders moved to intervene, the victim wriggled free and, after exchanging words with those seeking to intervene, defendant fled the scene. Defendant was subsequently arrested and charged with attempted kidnapping in the second degree.

At his trial, defendant testified that the aforementioned events were the result of mistaken identity. In sum, defendant claimed that, after meeting an individual named "Judith" on the Internet, the two arranged to have defendant simulate an "abduction" of Judith and thereafter engage in sexual role-playing activities together. According to defendant, he and Judith planned this mock abduction for a number of months and the preparation included defendant scouting the location of the event in Livingston, observing Judith while she rode her bicycle

in the neighboring countryside, and Judith executing a "consent form" in which she agreed to her own capture. Numerous electronic communications between defendant and Judith were introduced into evidence at trial in support of defendant's case. Finally, although the mock abduction was originally scheduled for March 2002, defendant claimed at trial that he and Judith had rescheduled for July 2002 and that, on the day he encountered the victim, he believed that she was Judith due to her physical appearance and the model of her bicycle.

Defendant was subsequently convicted as charged and sentenced, as a second felony offender, to 15 years in prison. Defendant now appeals, primarily challenging the manner in which the grand jury presentment was conducted and County Court's instruction to the trial jury.

We first address defendant's claims concerning County Court's failure to dismiss the indictment due to defects in the grand jury presentment (see CPL 210.20 [1] [c]; 210.35 [4]). In that regard, defendant avers that his right "to give any relevant and competent evidence" (CPL 190.50 [5] [b]) was impermissibly abridged because, during his testimony before the grand jury, he was precluded from introducing hard copies of the e-mail correspondence between Judith and himself. Relatedly, defendant also avers that his statutory right to testify before the grand jury was impaired due to the fact that he was precluded access to his computer hard drive—and the instant messages between him and Judith contained therein—in advance of his testimony. We find these claims unpersuasive.[1]

Although a grand jury presentment is not intended to be an adversarial proceeding (see People v Lancaster, 69 NY2d 20, 26 [1986], cert denied 480 US 922 [1987]), an accused who has abided by the requisite notice and waiver of immunity requirements (see CPL 190.45, 190.50 [5] [b]) must be afforded " 'a reasonably fair and uninterrupted opportunity . . . to . . . furnish the [g]rand [j]ury with [his or her] own version concerning the matters being investigated' " (People v Smith, 84 NY2d 998, 1000 [1994], quoting People v Lerman, 116 AD2d 665, 666

---

1. To the extent that defendant claims that the denied access to his computer hard drive constitutes a *Brady* violation, we find such claim to be without merit. Defendant was most certainly aware of the substance of his electronic communications with Judith (see People v LaValle, 3 NY3d 88, 110 [2004]; People v Doshi, 93 NY2d 499, 506 [1999]) and, in any event, the CPL makes no provision for preindictment disclosure, even upon a defendant's specific request (see Matter of Brown v Appelman, 241 AD2d 279, 283-284 [1998]).

[1986]; *accord People v Meglio*, 235 AD2d 434, 435 [1997], *lv denied* 89 NY2d 1038 [1997]). In addition, the People have "wide discretion" in presenting their case to the grand jury and need not "present all evidence in their possession that is favorable to the accused" (*People v Stanton*, 241 AD2d 687, 688 [1997], *lv denied* 90 NY2d 1014 [1997]; *see People v Lancaster, supra* at 25-26).

With these principles in mind, we find no error in the presentment herein which would warrant dismissal of the indictment. Defendant testified at length as to his Internet communications with Judith and the arrangements the two had made together. Although defendant was precluded from offering documentary proof which would essentially corroborate aspects of his grand jury testimony, he nonetheless was permitted to attest to the substance of the correspondence (*cf. People v Kaba*, 177 AD2d 506, 508 [1991], *lv denied* 79 NY2d 859 [1992]; *People v Townsend*, 127 AD2d 505, 507 [1987], *lv denied* 69 NY2d 1011 [1987]). Additionally, considering that the grand jury ultimately concluded that the entirety of the evidence before it was sufficient to establish a prima facie case (*see generally* CPL 190.65), we cannot conclude that the evidence at issue would have obviated " 'a needless or unfounded prosecution' " (*People v Lancaster, supra* at 27, quoting *People v Valles*, 62 NY2d 36, 38 [1984]). Finally, even if we were to find an error in the presentment, we would conclude that such a defect was subsequently cured by defendant's unfettered presentation of the evidence in question at trial (*see People v Perry*, 187 AD2d 678, 678-679 [1992], *lv denied* 81 NY2d 891 [1993]; *People v Gilliam*, 172 AD2d 1037, 1037 [1991], *lv denied* 78 NY2d 966 [1991]; *People v Isla*, 96 AD2d 789, 789 [1983]).

■ We next turn to the manner in which County Court instructed the trial jury on the legal precepts applicable to defendant's "mistake of fact" defense. Penal Law § 15.20 provides, as is relevant here, that "[a] person is not relieved of criminal liability for conduct because he [or she] engages in such conduct under a mistaken belief of fact, unless . . . [s]uch factual mistake negatives the culpable mental state required for the commission of an offense" (Penal Law § 15.20 [1] [a]). In the instant matter, County Court began its jury instruction concerning defendant's mistake of fact defense with an appropriate recitation of this principle. However, the court continued its instruction as follows:

"In consideration of [defendant's mistake of fact

defense], you must determine first what the defendant actually believed. That is, that he believed the victim had consented to such abduction. Next you must determine whether the defendant's mistake in identification of such individual was reasonable. That is, whether a reasonable person in defendant's position would, knowing what the defendant knew and being in the same circumstances, based on the known facts and availability of observations and investigation, have made the same mistake of fact. Thus, it is not sufficient that the defendant honestly believed in his own mind, [*sic*] that he was encountering the individual with which he had made this arrangement. An honest belief, no matter how genuine or sincere, may yet be unreasonable, and the mistake of fact must be such that a reasonable person in the defendant's position, knowing what the defendant knew, and being in the same circumstances, would have made the same mistake."

County Court thus imposed a two-step analytical framework for the jury to follow. In order to find the defense applicable, the jury was first required to conclude that defendant's mistake was, in fact, subjectively and honestly believed in the mind of defendant. The jury was then instructed to make a second, objective determination as to whether such belief was reasonable under the circumstances. Because imposition of this second requirement does not comport with the plain wording of the defense as codified, we find it to be error and, accordingly, reverse defendant's conviction and remit for a new trial.

We first note that, as a matter of pure statutory construction, Penal Law § 15.20 (1) (a) is silent in terms of a reasonableness requirement, a factor which, in and of itself, should lead us to conclude that no such requirement was intended by the Legislature (*see People v Pinkoski*, 300 AD2d 834, 837 [2002], *lv denied* 99 NY2d 631 [2003]; McKinney's Cons Laws of NY, Book 1, Statutes § 74).[2] Furthermore, New York's Criminal Jury Instructions do not advise that an accused's mistake of fact must be objectively reasonable; rather, the instructions simply restate the rule as articulated in Penal Law § 15.20 (1) (a) (*see* 1 CJI[NY] 9.51, at 528-529; *see also* 1 Goodman and Leventhal,

2. It should also be noted that the legislatures of some other jurisdictions have affirmatively made the objective reasonableness of an accused's purported mistake a prerequisite to invocation of the mistake of fact defense (*see e.g.* Ind Code Ann § 35-41-3-7; Tex Penal Code Ann § 8.02 [a]).

Charges to the Jury and Requests to Charge in a Criminal Case § 5.48). Moreover, it has been recognized that, at the time that the mistake of fact defense was first codified in New York during the wholesale revision of the Penal Law in 1965 (*see* L 1965, ch 1030, § 15.20), the Legislature was influenced by the promulgation of the Model Penal Code (hereinafter MPC) and intended that analogous provisions of the new Penal Law would be construed consistent therewith (*see People v Marrero*, 69 NY2d 382, 387-388 [1987]; Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 15, at 74; *see also People v Sanchez*, 98 NY2d 373, 382 n 1 [2002]). Reasonableness is not set forth as an element of the mistake of fact defense in the MPC (*see* Model Penal Code § 2.04 [1] [a] [1985]; *see also* Model Penal Code § 2.04, Comment 1 [1985]). Finally, since Penal Law § 15.20 (1) (a) was put into effect, other New York courts confronted with the issue of whether a purported mistake of fact must be objectively reasonable have concluded, in direct reliance upon the MPC, that the Penal Law imposes no such requirement (*see People v Grinage*, 269 AD2d 780, 780 [2000], *lv denied* 95 NY2d 853 [2000]; *People v Rypinski*, 157 AD2d 260, 262-263 [1990]).[3]

Turning to whether County Court's error can be deemed harmless, we note that defendant's mens rea was the predominant issue at trial and was the subject of considerable proof on both sides. It is certainly possible that the jury credited prosecution proof indicating that, for example, defendant knew that Judith no longer wanted to take part in the planned "abduction" encounter and, therefore, concluded that defendant did not subjectively and honestly believe that he encountered Judith on

---

**3.** Another aspect of the Legislature's 1965 revision of the Penal Law merits comment. Contemporaneous with the codification of a mistake of fact defense in Penal Law § 15.20 (1) (a), the Legislature undertook to recodify the similar defense of justification (*see* L 1965, ch 1030, art 35; *see also* Penal Law § 15.20 [1] [c]). As the Court of Appeals recognized in *People v Goetz* (68 NY2d 96 [1986]), formulation of the justification article was also "particularly influenced" by the MPC (*id.* at 109). Nevertheless, while the MPC provides that the use of force against another is justified when the actor *subjectively* believes that such is necessary to protect persons or property (*see* Model Penal Code § 3.04 [1]; § 3.05 [1] [c]; § 3.06 [1]; *see also People v Goetz, supra* at 109-110), the Legislature eschewed the MPC approach in favor of explicitly requiring that, in the justification context, an actor must "reasonably believe" that his or her use of force was necessary under the circumstances (*see* Penal Law § 35.10 *et seq.*). Inasmuch as the Legislature took affirmative steps in making the objective reasonableness of an individual's belief a factor to be considered in the realm of the justification defense, we find meaning in its concomitant decision to omit reasonableness as an element of the mistake of fact defense.

the day in question. On the other hand, there is simply no way of telling whether, instead, the jury accepted defendant's version of events but did not find his beliefs to be objectively reasonable in compliance with the court's two-tier instruction. Under these circumstances, we cannot conclude that County Court's erroneous jury instruction was harmless beyond a reasonable doubt (*see People v Wesley*, 76 NY2d 555, 560 [1990]).[4]

Given the necessity for a new trial, we do not address defendant's remaining arguments.

CREW III, MUGGLIN, ROSE and KANE, JJ., concur.

Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Columbia County for a new trial.

---

4. We further note that our holding herein is not contradicted by past precedent of this Court. Contrary to the People's assertion, we did not hold in *Matter of Mario Y.* (75 AD2d 954 [1980]) that reasonableness is, in every instance, a chargeable aspect of the mistake of fact defense. In that case, the juvenile delinquency respondent was charged with shooting a rifle at a residence, acts which, if committed by an adult, would constitute the crime of reckless endangerment in the first degree (*id.* at 955; *see* Penal Law § 120.25). We rejected the respondent's claim that, inasmuch as he did not believe that the residents of the home were there at the time, his mistake of fact entitled him to an absolute defense to the crime charged (*Matter of Mario Y., supra* at 956). While our decision in *Mario Y.* did make reference to the reasonableness of the respondent's actions (*id.*), we logically did so considering that the crime at issue has recklessness as its applicable mens rea and recklessness is defined, in part, according to the standards of a reasonable person (*see* Penal Law § 15.05 [3]). Thus, we merely held that the respondent's mistake was not of a type as would negate the culpable mental state of recklessness under the circumstances (*Matter of Mario Y., supra* at 956) and, therefore, that decision is distinguishable from the subject case.